**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE CITY WIDE DEVELOPMENT CORPORATION, ET AL DEBTORS** § § § § § § | | **CASE NO. 21-30847-MVL-11** <br><br><br><br> **CHAPTER 11** |
| **CITY WIDE DEVELOPMENT CORPORATION** *Plaintiff,* <br> V. <br> **CITY OF DALLAS** *Defendant.* § § § § § § § § § § § | | <br><br><br><br><br><br><br><br><br> **ADV. NO.** _____ |

**PLAINTIFF'S PETITION TO REMOVE CLOUD AND QUIET TITLE BY INJUNCTIVE AND DECLARATORY RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

**City Wide Community Development Corporation,** Plaintiff, files this Original Petition to Remove Cloud and to Quiet Title By Injunctive and Declaratory Relief, and in support thereof, would show the Court as follows:

1. Plaintiff, Citywide Development Corporation is the party identified as "Borrower" in connection with the purchase under note and deeds of trust (the "Contract") of certain real property (the "Property") described on the annexed Ex. A,.

2. Plaintiff, a debtor in pending proceedings under Title 11, Chapter 11, is a Texas non-profit corporation with its principal place of business at 3730 S. Lancaster Rd., Suite 100, Dallas, Texas 75216.

3.  Defendant is the party identified as "Lender" in the Contract and is a home rule city in Dallas County, Texas. Defendant's principal place of business is 1500 Marilla Street, Dallas, Texas 75201. Defendant may be served with process at this address.

### Jurisdiction

1.  This Court has jurisdiction of this case, since both Plaintiff, a Debtor under Title 11 Chapter 11 and Defendant are residents of Dallas County, Texas, where the transaction arises that created this complaint. The District Court has "related to" jurisdiction under 28 U.S.C. 1334(b). This Court has authority to adjudicate this matter pursuant to the United States District Court for the Northern District of Texas' Miscellaneous Order No. 33.

### Statement of Facts

4.  On September 10, 2008, the Defendant granted Plaintiff a $500,000, 0% interest loan for the acquisition of nine (9) properties (improved and unimproved) to be redeveloped for the purposes of residential and commercial uses The legal descriptions are annexed hereto as Exhibit "A" to the Unsworn Declaration in Support of the Petition (the "Declaration")

5.  The loan was ultimately increased to $1,331,326 by virtue of additional loan and deed of trust and modifications occurring on August 10, 2009, January 12, 2011, August 28, 2013, June 25, 2014, and September 14, 2016. This was confirmed in writing by official council actions as shown on Exhibit "C," and also confirmed in Defendant's letter annexed to the Declaration as Exhibit "B."

6.  Defendant also filed a Proof of Claim in a pending bankruptcy case, under Claim 16-1, which this Court may take judicial notice in case #21-30487, in the United States Bankruptcy Court, Northern District of Texas, Dallas Division which attached all of the

deeds of trust, notes, modifications, but omitted the loan agreement therein referenced.

7. As shown in Exhibit "C", the $1.331 million loan was ultimately converted to a conditional grant by September 14, 2016, official action, where terms of the notes and deeds of trust, providing usual remedies for foreclosure and pursuit of any deficiency under the note, that was secured by the loan, were modified under the conditional grant. The result after the modification was if there were default in the performance obligations of completion of the redevelopment, as therein defined, the sole remedy to Defendant was to receive the conveyance of the property. Development was also extended to September 12, 2018.

8. The specific facts relied on by the Plaintiff to justify the issuance of the writ of injunction and declaratory relief are as set forth in the annexed Declaration as follows:

    a. In early 2017, at least sixteen (16) months prior to the expiration of the deadline for completion of development called for, Defendant, acting thru Raquel Favela, Director Economic Development, verbally advised Plaintiff, thru verbal advice to Sherman Roberts, President of Plaintiff, that Defendant was placing a "freeze" on all low-income housing development in the City of Dallas. Plaintiff was advised to cease and desist any open development projects that were yet in the planning and design phase. By that time, Plaintiff would show the Court that it had already completed over a ten-year period in excess of $70 million in housing and commercial developments with the City, with a proven track record of success, and made substantial progress as shown on Ex. F to a mixed residential and commercial project, very similar in size and scale to the Lancaster Urban Village project completed by the Plaintiff thru a mix of federal, City of Dallas, and private sector funds exceeding $30 million dollars.
    b. Between early 2017 and May 2018, Plaintiff was advised, and therefore believed the staff of Economic Development worked on what they perceived were deficiencies in housing policy that led to the freeze on development. In May 2018, the City accepted the staff recommendations from this effort as shown in Exhibit "D". Staff also made recommendations on extensions of development for other developers that were on hold under the freeze.
    c. Between 2018 and 2020, Plaintiff was never advised that its project would not be

offered a similar extension as that awarded to other parties. Rather, as shown in Exhibit "E," Plaintiff had confirmation from David Nogura, Director, Housing and Neighborhood Revitalization, dated November 1, 2018, after the development deadline of September 12, 2018, that Defendant continued to be certified as a Community Housing Development Organization ("CHDO"). Further, that Defendant "looks forward to working with you on your affordable housing programs".

d. By this date, as aforementioned, Plaintiff had already made substantial progress toward completion of the design and planning stages of the development, as shown on Exhibit "F," albeit it had slowed work down based on the "freeze" until receipt of green light to continue its development efforts of finalizing the design and arranging financing.

e. Between 2019 and 2020, Plaintiff awaited the decision of Defendant to lift the freeze and green light the project so that it could proceed with the development planning. These efforts continued until Defendant's surprise letter advising of default on performance of completion of redevelopment by the extension date of September 12, 2018. (See Exhibit "B"). Prior to this letter, Plaintiff and Defendant had been infrequent meetings, especially during the six (6) months prior, on the Opal project with no mention of a default.

f. This letter also referred to a litany of complaints, all of which have been fully satisfied by the Plaintiff, and were mere weak excuses for the egregious conduct of the Defendant, to wit:

1. Plaintiff needed to make arrangements to repay a $1 million obligation allegedly owed to Defendant. The Bankruptcy Court determined that there was no obligation on this note to Defendant under the express terms of the note.
2. Plaintiff had borrowed funds from a tax lender that impermissibly primed Plaintiff's lien on other property. This $130,000 matter will be paid and released from the $5 million net sales proceeds held by Plaintiff awaiting plan confirmation.
3. Plaintiff had failed to complete development on Opal after being told to hold.
4. Although Plaintiff had substantially completed development on the Lancaster Kiest Project, it had failed to complete "Phases 1 and 4". This statement was incorrect since Phase 1 had been completed. Phase 4 lots were returned to Defendant in settlement of this dispute in the course of the bankruptcy case.

  5. he Defendant was withdrawing a conditional grant request that had been approved for the development of another project, Lisbon.

 g. Notwithstanding the express terms of the modification (See Exhibit C), Defendant has filed a proof of claim in the bankruptcy case, seeking not a simple return of the property under the conditional grant, but a full claim for payment of the $1.331 million it advanced for the purchase of the property Notwithstanding its interference with the completion of the project, Defendant asserted in Exhibit B, and in its Proof of Clain 16-1, its intention to pursue an alleged default created by Defendant's own actions with no limitation on remedies to be pursued.

 h. Absent the requested declaratory and injunctive relief, Plaintiff will lose its rights to the property and has no adequate remedy at law. Defendant would merely proceed to sell the property at foreclosure to itself or a third party and wipe out the interest of Plaintiff. Plaintiff would also seek to pursue deficiency claims under its Proof of Claim 16-1.

  **I. FIRST CAUSE OF ACTION, SUIT FOR INJUNCTIVE RELIEF**

9. The legal and equitable grounds that justify the issuance of a writ of injunction on the basis of the foregoing facts are that the Defendant committed improper interference that interfered, hindered, and delayed the timely completion of the project under Exhibit "C" extension, and now under Exhibit "B", and its Proof of Claim has made a demand for rights to accelerate and foreclose. In addition, assert rights to monetary claims which Plaintiff has been required to escrow $250,000 against under its proposed plan of reorganization to block objections based on the feasibility of the Plan.

10. The potential for irreparable harm and injury to Plaintiff by the aforementioned acts of Defendant is patently clear.

11. The Court should set a hearing on shortened notice for a temporary restraining order, and following interim relief, grant temporary and permanent injunction.

## II. DEFENDANT'S SECOND CAUSE OF ACTION, DECLARATORY RELIEF

### Invalidity of Defendant's Claim; Declaratory Relief

12. The claim that Plaintiff is in default under the conditional grant agreement, after being interfered with, and that Plaintiff is in default, subject to acceleration under the deeds of trust, and owes a monetary sum after foreclosure for any deficiency under the modified deed of trust, is both an impermissible cloud on Plaintiff's title, and an invalid claim for monetary damages. This court is respectfully requested to declare Defendant's had no right to either monetary default, or to accelerate and foreclose in the absence of a default caused by interference, hindrance, and prevention.

13. Plaintiff thus seeks non-monetary relief for a declaration removing the cloud of title and denying monetary damages are owed by Plaintiff to Defendant. Rather, Plaintiff request the equitable relief of being restored to its contract status as of early 2017 when it was advised to cease development

### Attorney's Fees

14. The filing of this TRO was adequate statutory notice of Plaintiff's challenge to Defendant's actions to eliminate the cloud on its title to the Property.

15. The plaintiff has retained the law firm whose name is subscribed to this petition to represent the plaintiff in this action and has agreed to pay the firm a reasonable fee for necessary services. An award of attorney's fees to the plaintiff would be equitable and just and authorized by Section 37.009 of the Texas Civil Practice and Remedies Code

Case 22-03051-mvl Doc 1 Filed 05/20/22 Entered 05/20/22 21:39:51 Page 7 of 10

WHEREFORE, the Plaintiff respectfully requests that the Court (1) enter an order granting Plaintiff's Original Petition to Remove Cloud on Title and (2) void the Defendant's threatened acceleration and pursuit of monetary damages; (3) recover attorney's fees and cost; (4) and such other and further relief as the Court deems fair and just under the circumstances.

Dated: May 20, 2022. ` /s/Kevin S. Wiley, Sr.
THE WILEY LAW GROUP, PLLC
State Bar No. 21470700
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Telephone: 972-913-2683
      or 214-537-9572
Telecopier: 972-449-5717
kwiley@wileylawgroup.com
*Counsel for Plaintiff*

7 | P a g e

Kevin S. Wiley, Sr.
State Bar No. 21470700
Kevin S. Wiley, Jr.
State Bar No. 24029902
**The Wiley Law Group, PLLC**
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Tel. (214)537-9572
Fax (972)498-5717
Kwiley@wileylawgroup.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE CITY WIDE DEVELOPMENT CORPORATION, ET AL DEBTORS** | § § § § § | **CASE NO. 21-30847-MVL-11** |
| | § | **CHAPTER 11** |
| **CITY WIDE DEVELOPMENT CORPORATION** *Plaintiff*, | § § § § | |
| V. | § § | |
| **CITY OF DALLAS** *Defendant.* | § § | **ADV. NO. _____** |

**DECLARATION IN SUPPORT OF PLAINTIFF'S PETTON TO REMOVE CLOUD AND QUIET TITLE BY INJUNCTIVE AND DECLARATORY RELIEF**

Now Comes, Sherman Roberts, President of Citywide Community Development Corporation ("CWCDC"); Lancaster Urban Village Residential, LLC ("LYUVR"); and Lancaster Urban Village Commercial, LLC ("LUVC"), ("Debtors") and makes this declaration pursuant to 28 U.S.C. §1746 in support of Plaintiff's Petition to Remove Cloud and Quiet Title

by Injunctive and Declaratory Relief (the "Petition" under penalty of perjury. All capitalized terms are as defined in the Second Amended Plan as modified [Dkt. #379] (the "Plan").

"I have reviewed the pleadings associated with the Petition, and they are all true and correct. I further certify the truth and accuracy of the following statement:

1. Debtor's Principal, Mr. Sherman Roberts, one of the Designated Witnesses, is the Custodian of Record under Rule 803, Fed. R. Evidence. As Custodian, business records are maintained under his care, custody, and control. Attached to the Petition is this unsworn declaration under penalty of perjury that the following designated exhibits are duplicates of originals of memorandums, reports, records, or data compilations, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge that are and was kept in the course of a regularly conducted business activity, and it was the regular practice of that business activity to make the memorandum, report, record, record or data compilation. The following designated exhibits fit this description:

2. **Exhibits**

    a. Ex. A. Legal Description of Real Property involved in the Opal Project at bates numbers 000001 through 000007.

    b. Ex. B. Letter from City of Dallas to Sherman Roberts threatening, among other demands, acceleration on the Opal Project due to alleged default in completion of development under terms of conditional grant agreements secured by Deeds of Trust. Bates number 000008 through 000016.

    c. Ex. C. Excerpts from City of Dallas Proof of Claim 16-1 filed 12/6/21 by City of Dallas that contain Official Action of the City of Dallas authorizing an extension of development period to September 12, 2018, and also converting the loan to a conditional grant subject to the return of the property as the sole remedy for default under terms. Bates number 000017 through 000026.

    d. Ex. D. City of Dallas Resolutions reflecting the adoption of Housing Policy in 2018 following analysis started in 2017. Provides an extension for certain projects that were interrupted by the freeze placed on development in 2017. Bates number 000027 through 000040.

    e. Ex. E. Letter from City of Dallas to Sherman Roberts dated November 1 2018 certifying Plaintiff as a Community Housing Development Operation and looking forward to working with Plaintiff. Bates number 000041 through 000043.

    f. Ex. F. Summary of Pre-Development efforts completed by Plaintiff before freeze in 2017. Bates number 000044 through 000069.

Further Declarant sayeth naught."

                                                    */s/ Sherman Roberts*
                                                    Sherman Roberts, President
                                                    Date: May 20, 2022