

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 6, 2023**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CITY WIDE COMMUNITY** | § | **Case No. 21-30847** |
| **DEVELOPMENT CORP. ET AL.** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| **CITY WIDE COMMUNITY** | § | |
| **DEVELOPMENT CORP.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Adv. Pro. No. 22-03051** |
| | § | |
| **CITY OF DALLAS** | § | |
| | § | |
| Defendant. | § | |
| | § | |

## <u>ORDER GRANTING MOTION TO DISMISS</u>

1

Before the Court is the *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim*[1] and *Brief in Support*[2] (together, the "**Motion**") filed on February 8, 2023, by the City of Dallas (the "**City**" or the "**Defendant**"), as well as T.C. Broadnax, Robin Bentley, and David Noguera (collectively, the "**Individual Defendants**"). The Individual Defendants have since been dismissed without prejudice to refiling.[3] By the Motion, the City seeks an order from this Court dismissing the Amended Complaint filed by City Wide Development Corporation (the "**Plaintiff**" and, together with the Defendant, the "**Parties**") with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] On February 28, 2023, the Plaintiff filed its *Response of City Wide Community Development Corporation to Defendant's Third Motion to Dismiss* (the "**Response**").[5] On March 14, 2023, the Defendant filed its Reply (the "**Reply**").[6]

On March 28, 2023, the Court held a hearing on the Motion. Counsel appeared for both the Plaintiff and the City, and the Court heard argument. At the conclusion of the hearing, the Court took the matter under advisement. After considering the briefing and oral arguments of counsel, the Court concludes that the Motion to Dismiss should be **GRANTED** pursuant to Rule 12(b)(6) as more fully detailed in this Order.

---

[1] ECF No. 67.

[2] ECF No. 68.

[3] ECF No. 91. *See also Motion for Nonsuit* at ECF No. 89 ("Plaintiff no longer desires to prosecute Bentley, Broadnax, and Nogura at this time unless the City of Dallas produces evidence involving the said defendants. Plaintiff reserves the right to call Bentley, Broadnax, and Nogura if needed.").

[4] Hereinafter, all capitalized references to a Rule or the Rules shall be made in reference to the Federal Rules of Civil Procedure (a "**Rule**" or the "**Rules**"). Similarly, any capitalized reference to a Bankruptcy Rule or the Bankruptcy Rules shall be made in reference to the Federal Rules of Bankruptcy Procedure (a "**Bankruptcy Rule**" or the "**Bankruptcy Rules**").

[5] ECF No. 79.

[6] ECF No. 84.

## I.    <u>Jurisdiction and Venue</u>.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), and the matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). Defendant has consented to the entry of a final order by this Court.[7]

## II.    <u>Factual and Procedural History</u>.

In September 2008, the Plaintiff executed a loan agreement and note to memorialize an agreement (together, the "**Redevelopment Agreement**") with the City, whereby the City would provide a $500,000.00 loan for the acquisition of certain properties to be redeveloped for residential and commercial uses (the "**Opal Project**"). On October 21, 2008, the Plaintiff executed a deed of trust securing the loan. By the terms of the agreement, the construction of the development had to be completed within five (5) years of the execution of the loan documents. The loan was modified in five separate instances to increase the amount of the loan to an ultimate figure of $1,331,326.00 and extend the completion deadline to September 12, 2018. The loan was also converted to a conditional grant with the City's remedy for a default changing from foreclosure to the conveyance of the properties to the City.

In early 2017, at least sixteen (16) months prior to the completion deadline set forth in the loan documents, Sherman Roberts ("**Mr. Roberts**"), the President of the Plaintiff, was advised that the City had placed a pause on housing and economic development. On December 18, 2020, during the pendency of this "freeze" and ongoing negotiations between the Parties as to the next steps in regard to the Opal Project, Mr. Roberts received a letter advising Plaintiff of its alleged

---

[7] *See* ECF No. 67, p. 4, ¶ 2.

3

default in connection with the Redevelopment Agreement given that the Opal Project had not been completed by September 18, 2018.

On April 30, 2021, the Plaintiff filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code.[8] The City filed a Proof of Claim No. 16-1 ("**Claim 16-1**") in the bankruptcy case, which attached the deeds of trust, notes, and modifications.[9] On March 21, 2022, the Plaintiff conceded that the Redevelopment Agreement constituted an executory contract, and elected the following:

> Rather than dispute [Claim 16-1] on a contested basis, Debtors will amend their Plan [of Reorganization] to acknowledge a default has occurred in the transactions referenced under [Claim 16-1] that would be [incurable] under 11 U.S.C. § 365 principles. Rather, Debtors will file an amended plan that will include an adversary complaint against the City of Dallas seeking Declaratory and Injunctive relief under *Inter Alia*, interruption, hindrance, and prevention doctrines. This litigation will be resolved post-confirmation.[10]

On May 20, 2022, the Plaintiff filed its *Petition to Remove Cloud and Quiet Title by Injunctive and Declaratory Relief* (the "**Complaint**") commencing the above-captioned adversary proceeding (the "**Adversary Proceeding**") against the Defendants.[11]

On August 2, 2022, the Defendant filed its original *Motion to Dismiss for Failure to State a Claim*.[12] On August 23, 2022, the Plaintiff voluntarily amended its Complaint, filing the *First Amended Petition to Remove Cloud and Quiet Title by Injunctive and Declaratory Relief*,[13] prompting the Defendant to withdraw its original motion to dismiss and refile a second *Motion to Dismiss for Failure to State a Claim* on September 6, 2022.[14] Former Defendants Eric Johnson

---

[8] Voluntary Petition for Non-Individuals Filing for Bankruptcy, Case No. 21-30847-MVL11, ECF No. 1 (Bankr. N.D. Tex. 2021) (the "**Main Bankruptcy Case**").
[9] Claim 16-1 omitted the loan agreement itself.
[10] ECF No. 355 in Bankruptcy Case No. 21-30847-MVL11 (Bankr. N.D. Tex. 2022).
[11] ECF No. 1.
[12] ECF No. 13.
[13] ECF No. 17.
[14] ECF No. 20.

and Raquel Favela filed their *Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1)* on September 29, 2022.[15] On October 18, 2022, the Plaintiff filed its *Motion for Leave to File an Amended Petition*, requesting that the Court grant it an additional opportunity to amend its Complaint in order to "add an additional basis for denying [Defendant's second motion to dismiss.]"[16] On the same day, the Plaintiff filed its *Second Amended Petition to Remove Cloud and Quiet Title by Injunctive and Declaratory Relief*.[17] On October 19, 2022, a hearing was scheduled on the Defendant's second motion to dismiss.[18] At the hearing, the Court granted the Plaintiff's unopposed motion for leave to amend its Complaint a second time,[19] and on the same day, the City and Former Defendants Johnson and Favela withdrew their respective motions to dismiss.[20]

On October 25, 2022, the Plaintiff filed a *Corrected Second Amended Petition to Remove Cloud and Quiet Title by Injunctive and Declaratory Relief*.[21] The Defendants filed their *Answer to Plaintiff's Corrected Second Amended Petition to Remove Cloud and Quiet Title by Injunctive and Declaratory Relief* on November 15, 2022.[22] On January 18, 2023, the Plaintiff filed its *Unopposed Motion for Leave to File a Third Amended Petition*.[23] Based on the fact that the relief requested was unopposed, the Court granted the Plaintiff's motion for leave.

On January 25, 2023, the Plaintiff filed its *Third Amended Petition to Remove Cloud and Quiet Title by Injunctive and Declaratory Relief* (the "**Amended Complaint**"),[24] which is the

---

[15] ECF No. 29.
[16] ECF No. 34.
[17] ECF No. 35.
[18] ECF No. 43.
[19] *Id.*; *see also* ECF No. 49.
[20] ECF Nos. 41 and 42.
[21] ECF No. 46.
[22] ECF No. 47.
[23] ECF No. 51.
[24] ECF No. 53.

subject of the instant Motion to Dismiss.[25] In the Amended Complaint, the Plaintiff asserts the following causes of action:

(I)      Suit for Injunctive Relief;

(II)     Declaratory Relief;

(III)    Declaratory Relief for Equitable Estoppel;

(IV)     Declaratory Relief for Promissory Estoppel; and

(V)      Attorney's Fees.[26]

Thereafter, the Defendant filed the instant Motion. The Court held a hearing on the Motion on March 28, 2023. On April 5, 2023, the Plaintiff filed its *Post-Trial Brief in Support of Response to Defendant's Motion to Dismiss the Third Amended Petition* (the "**Supplemental Brief**").[27] In its Supplemental Brief, the Plaintiff abandoned its earlier arguments that the Defendant's governmental immunity from suit was waived as a result of either *ultra vires* actions or the Texas Tort Claims Act (the "**TTCA**").[28] The Plaintiff further agreed to non-suit the Individual Defendants.[29] Accordingly, the City is the only remaining defendant.

### III.    Legal Standards: Rule 12(b)(1) and Rule 12(b)(6).

Rule 12(b)(1), incorporated into this adversary proceeding by Bankruptcy Rule 7012, provides for the dismissal of a claim for lack of subject matter jurisdiction. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, as it is here, a court should consider the jurisdictional attack prior to turning to the merits.[30] In considering a Rule 12(b)(1) motion, the

---

[25] The Court notes that the Amended Complaint is the **fourth** iteration of the Complaint filed by the Plaintiff in this Adversary Proceeding. *See* ECF Nos. 1, 17, 46 and 53.

[26] ECF No. 53.

[27] *See* ECF No. 88.

[28] *Id.* at 15, ¶ 33.

[29] *Id.*; *see also* ECF Nos. 89, 90 and 91.

[30] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("This requirement [to first turn to jurisdiction] prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a

court is empowered to consider matters of fact which may be in dispute.[31] Ultimately, the motion

should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his

or her claim that would entitle the plaintiff to relief.[32]

Rule 12(b)(6) authorizes dismissal of a complaint that "fail[s] to state a claim upon which

relief can be granted."[33] In evaluating a Rule 12(b)(6) motion to dismiss, the Court "must accept

all well-pleaded facts as true, and … view them in the light most favorable to the plaintiff."[34]

However, the Court need not "strain to find inferences favorable to the plaintiffs."[35] To survive a

motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations,

which, if accepted as true, state a plausible cause of action.[36] This plausibility requirement sits

somewhere between possible and probable, and is satisfied where the plaintiff's pleaded facts

allow the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.[37]

In this case, the City has asserted governmental immunity in its Motion, raising arguments

for dismissal under both Rule 12(b)(1) and Rule 12(b)(6). Therefore, the Court must first evaluate

whether subject matter jurisdiction properly exists before it can decide whether the Amended

Complaint properly states a claim upon which relief may be granted.[38] Plaintiff argues that because

the City filed a proof of claim in the Main Bankruptcy Case, the City's governmental immunity is

---

plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction."); *In re Elcoteq, Inc.*, 521 B.R. 189, 195 (Bankr. N.D. Tex. 2014).

[31] *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[32] *Id.*

[33] Fed. R. Civ. P. 12(b)(6).

[34] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)).

[35] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[37] *Iqbal*, 556 U.S. at 678.

[38] *In re Elcoteq*, 521 B.R. at 195; *see also In re USA Promlite Technology Inc.*, 636 B.R. 743, 756 (Bankr. S.D. Tex. 2022).

waived *in toto* pursuant to 11 U.S.C. § 106(b).[39] However, as explained more fully below, while the Court finds that although the City waived its governmental immunity ***from suit*** by filing Claim 16-1, the fact that this Court has subject matter jurisdiction is not the end of the inquiry.[40]

In order to survive the Defendant's Motion, the Plaintiff's Complaint must ***also*** properly state a claim ***upon which relief may be granted***.[41] In Texas, governmental immunity has two components: immunity from suit, which bars suit against the entity altogether, and immunity from liability, which bars enforcement of a judgment against a governmental entity.[42] Therefore, the Court must separately determine whether the Plaintiff may be afforded the particular relief it seeks in the Amended Complaint. This determination depends on whether the substantive law in question provides an avenue for relief against a governmental entity.[43] Plaintiff advances four substantive causes of action in its Complaint, each of which is rooted in state law.[44] After reviewing each of the causes of action and applicable law, the Court hereby determines that none of Plaintiff's causes of action properly states a claim upon which relief may be granted against the City. As such, the Court concludes that the Motion should be **DENIED** pursuant to Rule 12(b)(1) but **GRANTED** pursuant to Rule 12(b)(6).

---

[39] *See* ECF No. 88, p. 16, ¶ 37.

[40] *See U.S. Postal Service v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744 (2004).

[41] *See* FED. R. CIV. P. 12(b)(6).

[42] *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 297 (5th Cir. 2021).

[43] *See U.S. Postal Service*, 540 U.S. at 744; *see also Supreme Beef Processors, Inc.*, 468 F.3d 248, 255 (5th Cir. 2006); *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

[44] Although the Amended Complaint does not explicitly reference Texas law with regard to each cause of action, in responding to the Defendant's Motion, the Plaintiff consistently relies upon Texas law to defend its causes of action. *See* ECF No. 79, pp. 12–30.

## IV.   __Analysis__.

### A.  **Should the Case Be Dismissed Under Rule 12(b)(1)?**

In this case, the Parties have advanced arguments addressing two related, but distinct types of immunity: sovereign immunity and governmental immunity.[45] Sovereign immunity applies to the states and its various entities while governmental immunity protects local units of government, such as cities, when they perform governmental functions.[46] The City has asserted its governmental immunity from suit in a Rule 12(b)(1) challenge to the Court's jurisdiction. For the following reasons, the Court concludes that the City is entitled to governmental immunity from suit under the Texas constitution, but that the City waived that immunity by filing Claim 16-1; and, therefore, this Court has subject matter jurisdiction.

### 1.  **Does the City of Dallas Have Governmental Immunity?**

The City claims that the Plaintiff's state law-based causes of action for declaratory relief, Counts II, III and IV of the Amended Complaint, are barred by governmental immunity from suit.[47] Specifically, the City argues that the Court lacks subject matter jurisdiction to adjudicate a lawsuit against a municipality on the basis of the causes of action alleged, absent a valid statutory or constitutional waiver of its governmental immunity.[48] The Plaintiff takes the position that governmental immunity does not apply in this case.

Under Texas law, "a city is not a freestanding sovereign with its own inherent immunity."[49] A city has no immunity of its own but is afforded governmental immunity under the State's constitution when acting as the State's agent and performing ***governmental*** functions for a

---

[45] *See Promlite*, 636 B.R. at 756; *see also Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011).
[46] *Promlite*, 636 B.R. at 756.
[47] ECF No. 68 at 13–15.
[48] *Id.* at 14 (citing S*uarez v. City of Texas City*, 465 S.W.3d 623, 631 (Tex. 2015)).
[49] *Wasson Interests, Ltd. v. City of Jacksonville ("**Wasson I**")*, 489 S.W.3d 427, 433 (Tex. 2016).

public benefit.[50] Governmental immunity does not protect a city's ***proprietary*** functions because proprietary functions are performed solely "for the private advantage and benefit of the locality and its inhabitants."[51] Proprietary functions do not implicate immunity because they are not performed under the authority, or for the benefit, of the sovereign.[52] The Texas Supreme Court has held that this governmental proprietary dichotomy applies to contract claims.[53] Therefore, the Court must determine whether the City was carrying out either a governmental or a proprietary function in contracting with the Plaintiff for community development and urban renewal.

In conducting this analysis, the Court is guided by the Texas Supreme Court's decision in *Wasson Interests, Ltd. v. City of Jacksonville* ("***Wasson II***").[54] In *Wasson II*, the Texas Supreme Court "considered both the statutory provisions and the common law in determining whether a city's contractual conduct is governmental or proprietary," focusing solely on the nature of the contract and not the nature of the breach.[55] The Texas Supreme Court first looked for guidance under the Texas Tort Claims Act (the "**TTCA**"), which generally defines governmental functions as those "that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised … in the interest of the general public[.]"[56] Finding that the statute did not provide for the actions taken by the city, the court found the act proprietary.[57] In coming to its conclusion, the Texas Supreme Court delineated four factors to aid courts in the analysis of the governmental versus proprietary dichotomy:

(1) whether entering into the contract was mandatory or discretionary;

---

[50] *See id.* at 434 (citing *City of Galveston v. State*, 217 S.W.3d 466, 478 (Tex.2007) (Willett, J., dissenting)); *see also Promlite*, 636 B.R. at 756.

[51] *Wasson I*, 489 S.W.3d at 434 (quoting *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884)).

[52] *Id.*

[53] *Id.*

[54] 559 S.W.3d 142, 150 (Tex. 2018).

[55] *Id.* at 148–50.

[56] *Id.* at 151 (quoting Tex. Civ. Prac. & Rem. Code § 101.0215(a)).

[57] *Id.* at 153-54.

(2) whether the contract was intended to benefit the general public or the city's residents;

(3) whether the city was acting on the State's behalf or its own behalf; and

(4) whether the city's act of entering the contract was sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary.[58]

The *Wasson II* court further instructed that when some factors point to a governmental function and others to a proprietary one, "courts should consider immunity's nature and purpose and the derivative nature of a city's access to that protection."[59]

Applying these factors to the instant facts, the Court finds it unquestionable that the City's actions were of a governmental nature. The only factor that leans in the Plaintiff's favor is that the contract was not mandatory. The City chose in its own discretion to contract with the Plaintiff, and there has been no argument that the action was mandated. Notwithstanding, each of the other factors lead this Court to conclude that the actions were not proprietary in nature. First, the contract was undoubtedly intended to benefit the general public. The City's actions related to "street construction and design; sanitary and storm sewers; building codes and inspection; zoning, planning and plat removal; and community development or urban renewal."[60] The project was intended to "improve the living and economic conditions of people with low and moderate income, and to benefit a low- or moderate-income neighborhood."[61] Section 373.004 of the Texas Local Government Code specifically provides for such programs.[62]

Second, it is clear that the City was acting on the State's behalf and not its own.[63] Section 101.0215 of the TTCA delineates a list of government functions provided to municipalities *by the*

---

[58] *Id.* at 150.

[59] *Id.* at 154.

[60] ECF No. 68 at 22.

[61] *Id.* at 23 (citing ECF No. 81 in Bankruptcy Case No. 21-30847-MVL11 (Bankr. N.D. Tex. 2021)).

[62] Tex. Loc. Gov't Code § 373.004.

[63] *See, e.g.*, *Wasson II*, 559 S.W.3d at 152 (finding the city was acting in its own behalf and not the state's by leasing lakefront property).

*State* to be exercised by the municipality *in the interest of the general public*.[64] Such actions, among others, include: health and sanitation services; street construction and design; garbage and waste removal; sanitary and storm sewers; building codes and inspection; zoning, planning and plat removal; and community development or urban renewal.[65] These actions are exactly what was intended by the City in entering this agreement. Finally, the fourth element, an element the Texas Supreme Court in *Wasson II* described as potentially outcome determinative, militates in favor of the governmental nature of the action.[66] The Court finds that the actions necessitated by the Opal Project were sufficiently related to a governmental function to render the nature of the act governmental for the purposes of immunity. Accordingly, the Court finds that the City was performing a governmental function—not a proprietary function—in contracting with the Plaintiff for urban renewal and development. Therefore, governmental immunity bars the Plaintiff's claims for declaratory relief, unless the City's immunity has been waived.

### 2.  Has the City of Dallas Waived its Governmental Immunity From Suit?

As aforementioned, a city is not a freestanding sovereign with its own inherent immunity under the Eleventh Amendment.[67] Governmental immunity flows from the state's constitution, rather than as an extension of the Eleventh Amendment.[68] The Plaintiff originally argued that the City's governmental immunity was waived under a number of different legal theories: (1) the statutory exception contained within the TTCA;[69] (2) the *ultra vires* exception to sovereign and

---

[64] Tex. Civ. Prac. & Rem. Code § 101.0215(a).

[65] *Id.*

[66] *Wasson II*, 559 S.W.3d at 150.

[67] *Wasson I*, 489, S.W.3d at 433; *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations … or other political subdivision[s.]") (internal citations omitted); *Reynolds v. Sims*, 377 U.S. 533, 575 (1964) ("Political subdivisions of States–counties, cities, or whatever–were and never have been considered as sovereign entities.").

[68] *See, e.g., Promlite*, 636 B.R. at 756 (holding same where lighting company brought breach of contract action in state court against city before filing for bankruptcy under Chapter 7).

[69] ECF No. 79, pp. 16–21.

governmental immunity;[70] and (3) the waiver of sovereign immunity contained in the Bankruptcy

Code when a governmental entity files a proof of claim in a bankruptcy case.[71] The Court will note

that after oral argument on the Motion, the Plaintiff abandoned its arguments that the City's

governmental immunity was waived under the TTCA or the *ultra vires* exception.[72] As such, the

Court will solely analyze whether the City's governmental immunity from suit is waived under

section 106(b) of the Bankruptcy Code. The Court will first look to whether the Plaintiff has

adequately pleaded the facts necessary for section 106(b) to apply in the instant case, then the

Court will analyze whether section 106(b) waives governmental immunity from suit under the

Texas constitution as a matter of law.

### a.  Has Plaintiff Adequately Pleaded Waiver Under 11 U.S.C. § 106(b)?

Section 106(b) of the Bankruptcy Code provides for the waiver of "sovereign" immunity

where certain preconditions are met. Specifically, section 106(b) provides the following:

> A governmental unit that has filed a proof of claim in the case is deemed to have
> waived sovereign immunity with respect to a claim against such governmental unit
> that is property of the estate and that arose out of the same transaction or occurrence
> out of which the claim of such governmental unit arose.[73]

In the instant case, the Plaintiff has adequately pleaded that the City is a municipality under the

Texas constitution.[74] "Municipalities" are explicitly included within the definition of the term

"governmental unit," as referenced in section 106(b).[75] Furthermore, there can be no dispute that

the Plaintiff's causes of action against the City are property of the estate,[76] nor that the Plaintiff's

---

[70] *Id.* at 21-26.
[71] *Id.* at 26-31.
[72] *See* ECF No. 88, p. 15, ¶ 33.
[73] 11 U.S.C. § 106(b).
[74] The Defendant alleges that the City of Dallas is a "home rule city" in Dallas County, Texas. *See* ECF No. 53, p. 2, ¶ 3. Home-rule cities in Texas, such as the City of Dallas, derive their authority from Article XI of the Texas Constitution, which deals with "Municipal Corporations." *See* TEX. CONST. ART. XI § 5.
[75] *See* 11 U.S.C. § 101(27).
[76] *See, e.g.,* ECF No. 53, pp. 4–11; *see also* ECF No. 53-1, pp. 1–2.

causes of action arose out of the same transaction or occurrence as that referenced in Claim 16-1 filed by the City.[77] As such, the Court concludes that section 106(b) of the Bankruptcy Code applies in the instant case.

### b. Does 11 U.S.C. § 106(b) Waive the City's Governmental Immunity From Suit?

The next question for the Court is whether section 106(b)'s waiver of "sovereign" immunity waives the City's separate governmental immunity from suit granted to the City in the Texas constitution. The Fifth Circuit, in *Tercero v. Texas Southmost College Dist.*, stated that in the absence of Eleventh Amendment sovereign immunity, "a state cannot bar a federal court from exercising jurisdiction over claims that state courts would recognize and enforce."[78] "Political Subdivisions that have waived governmental immunity, and that do not enjoy constitutional immunity, can be sued in federal courts … without regard to state statutory provisions to the contrary."[79] In determining jurisdiction, federal courts are directed to "look to the sources of their power, Article III of the United States Constitution and ***congressional statutory grants of jurisdiction***, not to the acts of state legislatures."[80] "However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction."[81] "This rule is a consequence of the exclusive power of Congress to control the jurisdiction of the federal courts and the Supremacy Clause implications of a state's suggestion that it might somehow (even indirectly) provide otherwise."[82]

In consideration of the foregoing, the Court finds that by virtue of the City's filing its Claim 16-1, the City waived its governmental immunity from suit to the extent allowed by section 106(b)

---

[77] *See, e.g.,* Claim 16-1 in Case No. 21-30847-MVL11 (Bankr. N.D. Tex. 2021).
[78] 989 F.3d 291, 297 (5th Cir. 2021).
[79] *Id.* at 298 (alteration added).
[80] *Id.* (emphasis added) (citing to *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981) (citation omitted)).
[81] *Id.*
[82] *Id.* at 298 (internal quotations omitted).

of the Bankruptcy Code. Therefore, the Court concludes that it has subject matter jurisdiction to adjudicate the claims advanced by the Plaintiff in the Amended Complaint; therefore, that portion of the relief requested by the Defendant pursuant to Rule 12(b)(1) is denied.

### B.  Should the Case Be Dismissed Under Rule 12(b)(6)?

Because the Court has determined it has subject matter jurisdiction, the Court must next determine whether the Plaintiff has asserted a legally sufficient claim for relief.[83] The Supreme Court has consistently held that just because a government entity has waived its immunity from suit does not mean that a plaintiff has a cause of action upon which relief may be granted.[84] "The Government's consent to be sued must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires."[85] As such, once a court has determined that a waiver of immunity should apply in a given case, the next step is for the court to determine "whether the source of substantive law upon which the claimant relies provides an avenue for relief."[86] Said another way, "[a]n absence of immunity does not [necessarily] result in liability if the substantive law in question is not intended to reach the [governmental] entity."[87]

This principle is also borne out in the requirement that claims against the governmental unit be "property of the estate."[88] The Supreme Court has emphasized that bankruptcy law is not itself a source of property rights.[89] To determine whether something is property of the bankruptcy estate, a court must look to both state and federal law. Specifically, a debtor's property rights are determined by state law, while federal bankruptcy law establishes the extent to which those rights

---

[83] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).
[84] *See U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744 (2004); *see also FDIC v. Meyer*, 510 U.S. 471, 483–84 (1994).
[85] *See U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992) (internal quotations omitted).
[86] *See Meyer*, 510 U.S. at 484; *see also State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).
[87] *U.S. Postal Serv.*, 540 U.S. at 744.
[88] *See Supreme Beef Processors, Inc.*, 468 F.3d 248, 255 (5th Cir. 2006)
[89] *Butner v. United States*, 440 U.S. 48, 54–55 (1979).

are property of the estate.[90] Therefore, although immunity from suit is waived under section 106(b) of the Bankruptcy Code, the Court must determine whether the Plaintiff's causes of action are viable against the City as a matter of state law.

### 1.  Can the Plaintiff Be Awarded Injunctive and Declaratory Relief Against the City?

Plaintiff advanced four substantive causes of action in its Amended Complaint: (1) suit for injunctive relief; (2) declaratory relief to remove cloud of title; (3) declaratory relief for equitable estoppel; and (4) declaratory relief for promissory estoppel.[91] Each of these causes of action are rooted in substantive state law.[92] The City argues that in a situation where a governmental entity waives its immunity from suit by filing an affirmative claim for relief, the Texas Supreme Court limited a Plaintiff's available remedies to monetary relief as an offset to the government's claim in *Reata Const. Corp. v. City of Dallas ("**Reata II**")*.[93] Therefore, the City asserts, because the Plaintiff does not request monetary relief in the Amended Complaint, the Plaintiff has failed to state a claim upon which relief can be granted. For the reasons stated below, the Court agrees with the City.

The Supreme Court of Texas has held that although it defers to the state legislature to determine whether the state has waived immunity, "sovereign immunity is a common-law creation, and the responsibility to define the boundaries of the doctrine remains with the judiciary."[94] In *Reata II*, the Supreme Court of Texas clearly defined one such boundary in holding that when a

---

[90] *In re Croft*, 737 F.3d 372, 374 (5th Cir. 2013).
[91] *See* ECF No. 53, pp. 11–14.
[92] Although the Amended Complaint does not explicitly reference Texas law on each cause of action, in responding to the Defendant's Motion, the Plaintiff consistently relies upon Texas law to defend its causes of action. *See* ECF No. 29, pp. 12–30.
[93] *See* ECF No. 84, pp. 8–9 (citing to 197 S.W.3d 371, 377 (Tex. 2006)).
[94] *Nazari v. State*, 561 S.W.3d 495, 502 (Tex. 2018) (quoting *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 753 (Tex. 2017)) (internal quotations omitted).

governmental entity files an affirmative claim for relief, "*immunity from suit* no longer completely exists for the governmental entity."[95] Specifically, the Court held:

> [W]here the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, *as an offset*, claims *germane to, connected with, and properly defensive to* those asserted by the governmental entity… save for the limitation that the City *continues to have immunity* from affirmative damage claims against it for *monetary relief exceeding amounts necessary to offset* the City's claims.[96]

Therefore, the *Reata II* court established that when a city asserts an affirmative claim for monetary relief, a responsive party may assert a counterclaim for monetary relief as an offset.[97] "This is not because the governmental entity 'waives' its immunity by filing a claim for affirmative relief. Instead, the scope of governmental immunity simply does not reach the defensive counterclaims to the extent that any recovery on the counterclaims serves as an 'offset' against the government's recovery."[98] The central question for the purpose of the instant case is whether Plaintiff's causes of action for injunctive and declaratory relief could be allowed as counterclaims for the purpose of "offsetting" the City's potential recovery on its Claim 16-1. For the reasons discussed further below, the Court finds that they cannot.

The Court notes that the Supreme Court of Texas addressed this question directly in its opinion in *Nazari v. State*.[99] The *Nazari* court explained, "[t]o the extent we used 'monetary relief' and its variants as something other than synonyms for 'damages,' *our goal was to emphasize 'monetary relief' as opposed to injunctive and other types of relief* rather than to abrogate the

---

[95] *Reata II*, 197 S.W.3d at 376 (emphasis added).
[96] *Id.* at 376–77 (emphasis added).
[97] *See Hillman v. Nueces County*, 579 S.W.3d 354, 362 (Tex. 2019).
[98] *C. Borunda Holdings, Inc. v. Lake Proctor Irrigation Auth. of Comanche Cty.*, 540 S.W.3d 548, 550 (Tex. 2018) (per curiam).
[99] 561 S.W.3d at 505–06.

state's sovereign immunity every time it enters a court in pursuit of a money judgment."[100] The

relief requested by the Plaintiff in its Amended Complaint does not constitute an "offset" under

Texas law. The right of offset (or setoff) is a common-law doctrine with an ancient historical

pedigree.[101] Under Texas law, the right of offset allows entities that owe each other money to apply

their debts to each other.[102] The doctrine generally supports the public interest of preventing

"circuity of actions," and promoting judicial economy by the avoidance of absurdity.[103] However,

a party's right to assert an offset is conditioned upon a mutuality of demand between the parties,

in the same capacity or right.[104] The purpose of the right is "to adjust the demands between the

parties and allow recovery of only the balance that is due."[105] In light of the foregoing, the Court

finds that the injunctive and declaratory relief sought by the Plaintiff does not qualify as an "offset"

under applicable Texas law.

The Plaintiff does not assert **any** demand for monetary relief in the instant case. The

Plaintiff, similarly, does **not** allege a cause of action for breach of contract.[106] Instead, the Plaintiff

---

[100] *Id.*; *see also Hilco Elec. Co-op., Inc. v. Midlothia Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) ("[W]hen words of a general nature are used in connection with the designation of particular objects or classes … the meaning of the general words will be restricted to the particular designation.").

[101] The right of offset dates back to Ancient Rome, as first codified in Justinian's sixth-century *Corpus Iuris Civilis*. *See* CODE JUST. 4.31.6 (S.P. Scott trans., 1932) ("It is not equitable that you should be compelled to pay what it is established you owe, before your demand for money lent has been answered.").

[102] *See Bandy v. First State Bank, Overton*, 835 S.W.2d 609, 618 (Tex. 1992) (discussing the purpose, extent, and roots of the doctrine of setoff.

[103] *Id.*

[104] *Cap. Concepts Props. v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (interpreting Texas law).

[105] *Id.* (quoting *Anderson v. Vinson Expl. Inc.*, 832 S.W.2d 657, 666 (Tex. App.–El Paso 1992, writ denied)); *see also, e.g., City of McKinney v. Hank's Restaurant Grp., L.P.*, 412 S.W.3d 102, 116 (Tex. App.–Dallas 2013, no. pet.) (concluding that because the *Reata II* rule is limited to offsetting claims for monetary relief, the government's immunity from counterclaims for injunctive and declaratory relief is not waived even where the governmental entity asserts its own claim for both monetary and declaratory relief).

[106] ECF No. 53, pp. 11–14. Notably, the Plaintiff **does not** allege a cause of action for breach of contract, but instead uses conclusory language to blame any default on the City's own actions or inaction. *Id.* at 12. Plaintiff asserts that Defendant's Claim 16-1 is "both an impermissible cloud on Plaintiff's title, and an invalid claim for monetary damages." *Id.* Under the Texas Uniform Declaratory Judgment Act ("**UDJA**"), the City is immune from all claims except those challenging the validity of its ordinances, which is not the case in the Amended Complaint. *See See Texas Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (reiterating the established rule that governmental entities themselves are not liable for actions seeking declaratory or injunctive relief under the UDJA); *see also Heinrich*, 284

requests that the Court **enjoin** the Defendant from exercising its legal remedies under the Parties' contract.[107] Alternatively, the Plaintiff asks the Court to **declare** that the City of Dallas does not have certain contractual rights.[108] Although the Plaintiff aberrantly includes the words "breach of contract" in the verbiage of its Amended Complaint, Plaintiff's cause of action requests a **declaratory judgment** stating that Defendant's claim is an "impermissible cloud on Plaintiff's title."[109] Such relief is not contemplated by the common law doctrine of offset, and therefore is not available to the Plaintiff as an offset to the City's filing of Claim 16-1. Accordingly, the Court concludes that Counts I and II of the Amended Complaint must be dismissed for failure to state a claim upon which relief may be granted.

### 2.   Can the City of Dallas Be Estopped from Exercising its Contractual Remedies for Default in the Instant Case?

As an alternative to the relief requested in Counts I and II of the Complaint, the Plaintiff requests that the Court **estop** the City from exercising its contractual remedies for default.[110] Counts III and IV of the Amended Complaint are causes of action asserting equitable estoppel and promissory estoppel.[111] Taking them in reverse order, courts in Texas have consistently held that

---

S.W.3d at 371–73 (discussing which governmental entities – the state, its subdivisions, or the relevant governmental actors in their official capacities – are proper parties to a suit seeking declaratory relief.).

[107] ECF No. 53, pp. 11–14. In Count I of the Amended Complaint, the Plaintiff alleges that Defendant, **through its officials**, "committed acts that either tortiously or contractually interfered with, interrupted, hindered, and delayed the timely completion of [the Opal Project,]" and because the Defendant has demanded acceleration, foreclosure, and a potential deficiency judgment, the Plaintiff would suffer irreparable harm if the Court did not impose an injunction barring Defendant from pursuing its claims. ECF No. 53, p. 11. However, a governmental entity retains immunity from claims for injunctive relief based on allegations that government officials violated the law or exceeded their powers under the law. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Such *ultra vires* claims must be brought against the individual actors in their official capacity, rather than against the government itself. *Id.* at 373. In the instant case, the Plaintiff voluntarily dismissed the Individual Defendants in this matter.

[108] ECF No. 53, pp. 11–14.

[109] ECF No. 53, p. 12. Generally, a trespass to try title claim is the exclusive method for adjudicating disputed claims of title to real property in Texas. *See* TEX. PROP. CODE § 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *see also Texas Parks and Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 389 (Tex. 2011) (holding that a declaratory judgment action cannot be brought against a government entity to determine title to land); *see also Sawyer*, 354 S.W.3d at 389 (holding that the UDJA does **not** create an exception to governmental immunity in suits to try title to land).

[110] *See* ECF No. 53, pp. 12–14.

[111] *Id.*

promissory estoppel claims are barred by governmental immunity unless the waiver contained in section 271.152 of the Local Government Code applies, which the Plaintiff does not argue to be applicable in this case.[112] As such, and in consideration of the foregoing, the Court concludes that Plaintiff's Count IV must be dismissed for failure to state a claim upon which relief may be granted.

Furthermore, it is well-settled in Texas that a city cannot be equitably estopped from exercising its governmental functions.[113] In general, the rule barring estoppel against the government, like other forms of governmental immunity, derives from the overall structure of government and separation of powers, "which at times requires that the interest of the individual yield to the public interest, even where mistakes may be committed by the government's agents."[114] Stated differently, barring estoppel helps preserve the power of the legislature, which "would be undermined if a government agent could – through mistake, neglect, or an intentional act – effectively repeal a law by ignoring, misrepresenting, or misinterpreting a duly enacted statute or regulation."[115] Likewise, barring estoppel "protects the public fisc."[116]

While there is an exception to this rule, "[it] is applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice."[117] A municipality may only be estopped in those cases where "justice requires its application, and there

---

[112] *See, e.g., Dallas/Fort Worth Int'l Airport Bd. v. Vizant Tech., LLC*, 565 S.W.3d 69, 75 (Tex. App.–Dallas 2017, pet. granted) *affirmed in part by* 576 S.W.3d 362, 374 (Tex. 2019) ("[P]romissory-estoppel claims fall outside the limited scope of waiver contained in Section 271.152 of the Local Government Code."); *see also Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507 (Tex. App.–El Paso 2014, no pet); *City of Deer Park v. Ibarra*, No. 01-10-00490-CV, 2011 WL 3820798, at *6–7 (Tex. App.–Houston [1st Dist.] Aug. 25, 2011, no. pet.) (mem. op.); *Somerset Indep. Sch. Dist. v. Casias*, No. 04-07-00829-CV, 2008 WL 1805533, at *3 (Tex. App.–San Antonio Apr. 23, 2008, pet. denied) (mem. op.).
[113] *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006); *see also City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970); *Rolison v. Puckett*, 198 S.W.2d 74, 77 (Tex. 1946).
[114] *See Super Wash, Inc.*, 198 S.W.3d at 773.
[115] *Id.*
[116] *Id.* at 774 (quoting *Office of Personnel Mgmt. v. Richmond*, 469 U.S. 414, 433 (1990)).
[117] *Prasifka*, 450 S.W.2d at 836.

is no interference with the exercise of its governmental functions."[118] Furthermore, courts have consistently held that equitable estoppel cannot be advanced as an independent claim against a governmental entity, nor does equitable estoppel effect an independent waiver of governmental immunity.[119] Therefore, there are considerable hurdles for the Plaintiff to overcome for an equitable estoppel claim to survive court scrutiny.

For myriad reasons, the Court concludes that the Plaintiff's Count III must be dismissed. First, the Court notes that Plaintiff failed to cite the proper test for application of equitable estoppel against a governmental entity in Texas.[120] Likewise, the Plaintiff completely failed to address the "justice requires" exception.[121] In point of fact, the Plaintiff never cited to any authority holding that equitable estoppel should be applied against a government entity, let alone survive an assertion of governmental immunity from liability.[122] Instead, the Plaintiff only cited to cases applying equitable estoppel to non-governmental litigants.[123] In doing so, the Plaintiff failed altogether to address the Defendant's arguments.[124] In sum, for the above reasons and because a claim for equitable estoppel is not an ***independent*** claim, Count III of the Amended Complaint must also be dismissed for failure to state a claim upon which relief can be granted.

---

[118] *Id.*

[119] *See Luce Bayou Public Utility District v. Kilpatrick*, 653 S.W.3d 323, 328–29 (Tex. App–Houston [14th Dist.] 2022, no pet.) ("[i]n the Equitable Estoppel Cases, the courts do not conclude that the governmental entity is equitably estopped from asserting sovereign or governmental immunity, not do the courts conclude that equitable estoppel is an independent claim against a government entity as to which such immunity has been waived."); *see also North Texas Municipal Water Dist. v. Jinright*, No. 05-18-00152-CV, 2018 WL 6187632, at *3 (Tex. App.–Dallas Nov. 27, 2018, pet. denied) (concluding that the doctrine of equitable estoppel may not be used as a basis for finding a waiver of an entity's governmental immunity) (mem. op.)).

[120] *Id.*; *see contra* ECF No. 68, pp. 15–16.

[121] *See* ECF No. 79, pp. 25–26.; ECF No. 88, pp. 22–23.

[122] *See id.*

[123] *See id.*

[124] *See* ECF No. 78, p. 16.

## C.  Should the Case be Dismissed with Prejudice?

The Defendant requests the Court dismiss the Plaintiff's Amended Complaint with prejudice, for failure to state a claim upon which relief may be granted.[125] The Plaintiff has amended its Complaint **four** times,[126] requiring the Defendant to file **four** iterations of a motion to dismiss.[127] In *Foman v. Davis*, the Supreme Court recognized that courts may deny leave to amend a complaint based on the "repeated failure to cure deficiencies by amendments previously allowed…[and] futility of the amendment."[128] In the instant case, the Court has carefully studied the record and found in Plaintiff's Response and Supplemental Brief only a narrow request for leave to amend the pleadings if the Court were to find it lacked subject matter jurisdiction.[129] The Court has subject matter jurisdiction. Moreover, to the extent that a request for leave to amend the pleadings may be implied by such a request, the Court finds that such a request would be futile in the instant case.[130]

## V.    Conclusion.

Therefore, based upon the foregoing and the record before the Court, it is hereby

**ORDERED** that the Defendant's Motion to Dismiss is hereby **DENIED** pursuant to Rule 12(b)(1), and it is further

**ORDERED** that the Defendant's Motion to Dismiss is hereby **GRANTED** pursuant to Rule 12(b)(6), and the Court hereby dismisses the Amended Complaint with prejudice.

### ###END OF ORDER###

---

[125] *See* ECF No. 68, p. 28.

[126] *See* ECF Nos. 1, 17, 35, 43, and 53.

[127] *See* ECF Nos. 13, 20, 29, and 67.

[128] 371 U.S. 178, 182 (1962); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

[129] The Defendant cites to *City of El Paso v. Chacon*, 148 S.W.3d 417, 421 (Tex. App.–El Paso 2004, writ denied), for the following proposition, "[i]f the petition does not allege jurisdictional facts, the plaintiff's suit is subject to dismissal only when it is impossible to amend the pleadings to confer jurisdiction." *See* ECF No. 79, pp. 14–15, ¶¶ 35–36, p. 27, ¶¶ 70–71; *see also* ECF No. 88, pp. 13–14, ¶¶ 26–28, p. 16, ¶ 36.

[130] *See, e.g. Great Plains Trust Co.*, 313 F.3d at 330.