

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

Signed December 8, 2025

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CITY WIDE COMMUNITY DEVELOPMENT CORP. ET. AL. | § § § § | Case No. 21-30847 |
| Debtor. | § § | |
| CITY WIDE COMMUNITY DEVELOPMENT CORP., | § § § § | |
| Plaintiff, | § § § | |
| v. | § § | Adv. Pro. No. 22-03051 |
| CITY OF DALLAS, ET AL., | § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

1

Pending before the Court is a *Motion for Summary Judgment* (the "**MSJ**") filed by Defendant City of Dallas (the "**City**" or the "**Defendant**") on August 15, 2025 [ECF Nos. 138, 139]. In the MSJ, the City requests that the Court grant the motion in favor of the City on each of the causes of action alleged by Plaintiff City Wide Community Development Corporation ("**City Wide**" or the "**Plaintiff**" or the "**Debtor**") in its *Third Amended Petition to Remove Cloud and Quiet Title by Injunctive and Declaratory Relief* (the "**Complaint**") filed on January 25, 2023 [ECF No. 53].

In the Complaint, City Wide alleges four causes of action. However, pursuant to the *Memorandum Opinion & Order* (the "**District Court Order**") entered by the District Court for the Northern District of Texas (the "**District Court**") on January 7, 2025, affirming in part and reversing in part the *Order Granting Motion to Dismiss* entered by this Court (the "**Dismissal Order**") on October 6, 2023 [ECF No. 99], in which the Court granted the *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim* (the "**Motion to Dismiss**") filed by the City on February 8, 2023 [ECF No. 67], only three causes of action remain in this matter. As for the three claims, City Wide alleges: (1) Injunctive relief with regard to the City's alleged breach of contract; (2) Declaratory relief that City Wide did not default under the parties' contract, as well as declaratory relief to remove "cloud of title"; and (3) Declaratory relief that the City cannot foreclose upon the properties in question under promissory estoppel. ECF No. 126.

The Court held a hearing on the MSJ (the "**MSJ Hearing**") on November 18, 2025. Counsel for City Wide and the City appeared. After hearing arguments on the merits and considering the evidence presented, the Court hereby GRANTS the MSJ with respect to all causes of action pursuant to Federal Rule of Civil Procedure 56 (the "**Rules**"), incorporated through Federal Rule of Bankruptcy Procedure 7056 (the "**Bankruptcy Rules**") and finds that there is no

genuine issue of material fact with regard to any of the remaining causes of action.[1] The following constitutes the Court's analysis underlying its ruling.[2] Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2), and/or the parties have consented to this Court's authority to issue final orders.

I.  **FACTUAL/PROCEDURAL HISTORY**

   A. **Factual History**

Given both the parties' and the Court's intimate and extensive knowledge of the factual history of this case, the Court will provide a brief summary of the factual history of this case. City Wide entered into a loan agreement with the City in September 2008 (the "**Loan Agreement**") to obtain and demolish several properties, with the intention of then re-developing the properties under a mixed-use development. ECF No. 139 at 6. Under the Loan Agreement, the City would provide City Wide with $500,000 to acquire and demolish the properties in question within five years of the execution of the Loan Agreement. Over time, the Loan Agreement was modified and extended on at least four separate occasions between August 2009 to June 2014, ultimately moving the deadline on the development project to a September 2018 completion deadline, in exchange for approximately $1.3 million loaned by the City. ECF No. 136, Ex. E. Under the modified Loan Agreement, any breach by City Wide would be remedied by conveyance of the properties to the City.

Per the agreement, ten (10) properties were ultimately purchased with funds provided by the City, under what became known as City Wide's "Opal Project". However, as stipulated by City Wide, the Plaintiff never actually began construction on any of the properties under the Opal

---

[1] Therefore, the Court also dismisses the case.
[2] The Court issued a lengthy oral bench ruling at the conclusion of the MSJ Hearing. That ruling is incorporated herein.

3

Project, and eventually filed for Chapter 11 bankruptcy on April 30, 2021. *See* Case No. 22-03051-mvl11. On December 6, 2021, the City filed a proof of claim related to the Opal Project properties. On March 21, 2022, the City and City Wide stipulated that the Opal Project was an executory contract—which City Wide acknowledged it was therefore in breach of—and that resolution of the City's claim would be handled through the above-captioned adversary proceeding. *See* ECF No. 139, Ex. G.

After the filing of the adversary proceeding, and according to the most recently amended Complaint filed by City Wide, the reason that the properties under the Opal Project were never re-developed and completed within the specified timeframe was because the City had an issued a moratorium on all development projects, thereby hindering City Wide's ability uphold its contractual obligations under the Loan Agreement. More specifically, the president of City Wide—Mr. Sherman Roberts ("**Mr. Roberts**")—was allegedly advised by Ms. Raquel Favela ("**Ms. Favela**")—the former Chief of Housing and Economic Development for the City of Dallas—in early 2017 that the City was placing a "freeze" on all affordable housing development for the time being, thereby forcing City Wide to cease development on the Opal Project properties. ECF No. 53 at 5.

At Mr. Roberts' deposition taken on July 9, 2025, Mr. Roberts testified that the alleged moratorium on development of the Opal Project was in effect primarily because City Wide was unable to secure another extension to the completion date on the project. *See* ECF No. 140, Roberts Dep. at 38:3–38:12. Mr. Roberts further testified that he took this inability to secure an extension, as well as the inability to "draw down" additional funding based on City Wide's development plans, as confirmation that the City was not allowing any development projects to progress at that time. *Id*. Although Mr. Roberts testified that he was not told specifically by Ms. Favela or anyone

else for the City that a moratorium was in place, nor was he given anything in writing that established the same, he testified that the moratorium was "implied" based on the fact that no city projects were allegedly "moving forward" at that time. *Id*. at 41:9–41:22.

As to the implied moratorium, Mr. Roberts further testified that not only did Ms. Favela never tell him directly that a moratorium was in place, but, when asked if he could point to a specific conversation in which that information was relayed to him, Mr. Roberts could not. *Id*. at 42:3–42:9. Mr. Roberts also could not recall whether he had ever received any written instructions from the City that modified the development deadline for the Opal Project, nor could he recall having been told by anyone at the City that he would be receiving an extension to the deadline. *Id*. at 49:15–49:24.

Additionally, Mr. Roberts testified that, of the $1.3 million loaned to City Wide to complete the Opal Project, $300,000 of the funds allegedly requested remained outstanding. *Id.* at 23:17–23:22. As Mr. Roberts phrased it during his deposition, he requested to keep "moving forward" with the Opal Project because the City still had City Wide "keyed in for" $300,000 in terms of outstanding funds dedicated towards completing the Opal Project. *Id*. at 39:19–40:22. However, Mr. Roberts testified that, unlike previous invoice requests, he had only made a "verbal request" for the outstanding funds. *Id*. at 24:2–24:6. Furthermore, Mr. Roberts did not affirmatively testify as to whom he made his verbal request or the result of same. *See id*. at 40:25–42:2.

At Ms. Favela's deposition taken on July 9, 2025, Ms. Favela testified that she never promised City Wide an extension to the Opal Project agreement, nor did she ever promise **any** developer working with the City that they would receive a completion deadline extension. ECF No. 140, Favela Dep. at 18:9–19:2. In fact, Ms. Favela testified that she never met with Mr. Roberts about the Opal Project **at all**. *Id*. at 18:5–18:8. Upon being asked whether it would have been

5

reasonable for a developer such as City Wide to have relied upon an alleged promise by either Ms. Favela or a "subordinate" in a similar position within the City as to an alleged extension of the contract deadline, Ms. Favela testified that it would not be reasonable because "City staff does not have the authority to make promises on any contractual obligation." *Id*. at 51:20–51:25. Rather, "that authority lies solely on the mayor and council," and that those parties specifically would have to "take action" that authorizes the city manager to extend any development contract deadlines. *Id.* at 51:25–52:2.

### B. Procedural History

City Wide filed bankruptcy under Chapter 11 of the Code on April 30, 2021. *See* Case No. 21-30847-mvl11. Subsequently, the City filed a Proof of Claim ("**Claim 16-1**") in the Debtor's bankruptcy case. Furthermore, on March 21, 2022, and pursuant to the *First Amended Rule 11 Stipulation on Disclosure Statement Objections* filed by the Debtor, City Wide stipulated that the Loan Agreement was in fact an executory contract, and acknowledged that a "**default** has occurred in the transactions referenced under [Claim] 16-1 that would be **uncurable** under 11 U.S.C. § 365 principles." *See* Case No. 21-30847, ECF No. 355 (emphasis added).

City Wide further stipulated that, rather than dispute Claim 16-1 on a contested basis through the bankruptcy process, the claim would be addressed in this current adversary proceeding in post-confirmation litigation as part of the Debtor's Chapter 11 Plan. The parties stipulated that if the Debtor were to lose on its causes of action in the adversary proceeding, the Opal Project properties secured by Claim 16-1 would be returned to the City, and "any remaining deficiency claim by the escrow of $250,000 against any potential claim either at the title company or in the Court Registry" would be satisfied. *Id*.

During the course of the adversary proceeding, and after the filing of numerous amended complaints by City Wide, the Court commenced a hearing with regard to the Motion to Dismiss on March 28, 2023. In the Motion to Dismiss, the City argued that City Wide's claims should be dismissed because: (1) the Court did not have subject matter jurisdiction over the case but the causes of action alleged were barred by governmental immunity; and (2) City Wide failed to state a claim pursuant to Rule 12(b)(6) of the, made applicable under Bankruptcy Rule 7012. *See* ECF No. 67. The Court eventually denied the City's motion for lack of subject matter jurisdiction, but granted the motion under Rule 12(b)(6), holding that City Wide's causes of action were barred by the City's governmental immunity. *See* ECF No. 99. Furthermore, the Court concluded that City Wide's equitable estoppel cause of action was dismissed for failure to state a claim because equitable estoppel was not an independent cause of action. *Id*.

Subsequently, the District Court affirmed in part and reversed in part the Court's Dismissal Order, affirming the Court's ruling with respect to dismissal of the equitable estoppel claim, but reversing with respect to the Court's dismissal of Counts I, II, and IV in the Complaint. *See* ECF No. 126. Notably, the District Court held that, upon review of the Complaint, Counts I and IV are "rooted in breach of contract law." *Id*. Likewise, the District Court held that Count II, as constructed, was effectively two separate causes of action in one: (1) a claim seeking a declaratory judgment that City Wide did not breach the parties' contract; and (2) a claim to quiet title as to the Opal Project properties. *See id*. Pursuant to the holding in *Pilgrim's Pride Corporation*, the Court incorporates the District Court's factual findings and legal conclusions as part of the Court's analysis hereinafter. *See In re Pilgrim's Pride Corp.*, 442 B.R. 522, 529 (Bankr. N.D. Tex. 2010) (Lynn, J.) ("The Supreme Court has said that the doctrine of the law of the case posits that when a

7

court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citation omitted) (internal quotations omitted).

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also* Fed. R. Bankr. P. 7056. In making this determination, the facts and inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Berquist v. Washington Mutual Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial. *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001). To support or refute an assertion that a genuine issue of material fact exists, the parties **must cite to particular parts of the record**, show that the materials cited do not establish the absence or presence of a general dispute, or show that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). Likewise, the nonmovant cannot satisfy its burden by only showing metaphysical doubt. A genuine issue of material fact exists if the evidence is such that a reasonable fact finder could return a judgment for the nonmoving party. *Pylant v. Hartford Life and Acc. Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007).

## III. DISCUSSION

In the MSJ, the Defendant contends that there is no genuine dispute of material fact with respect to all three remaining causes of action in the Complaint. Each cause of action will be discussed in further detail below:

8

A. **Count I**

First, the City argues that the MSJ should be granted as to Count I because the undisputed evidence shows that City Wide cannot establish a breach of contract on three of the four required elements, pursuant to the District Court Order characterizing Count I as a breach of contract claim. Under Texas law, the elements for a breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *See Brooks v. Excellence Mtg., Ltd.*, 486 S.W.3d 29, 36 (Tex.App.—San Antonio 2015, pet. denied); *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882 (Tex. 2019).

The City contends that City Wide cannot establish that there is a genuine dispute of material fact with respect to the second, third, or fourth elements. More specifically, the City contends that: (1) City Wide cannot meet its burden as to the second element because, in his deposition, Mr. Roberts testified that City Wide never completed the Opal Project by the project deadline, and was therefore in breach; (2) City Wide cannot meet its burden as to the third element because no construction had been started (much less completed) and the testimony from both Mr. Roberts and Ms. Favela makes it beyond dispute that there was no moratorium on development; and (3) City Wide cannot meet its burden as to the fourth element because City Wide has failed to show any damages beyond "hypothetical" damages if the City were to foreclose on the Opal Project properties. ECF No. 139.

City Wide's buckshot response to the MSJ (the "**Response**") includes: (1) reassertions of the District Court's basis for reversing in part the Court's Dismissal Order; (2) a recitation of the allegations contained in the Complaint as evidence of a genuine dispute of material fact as to the City's alleged breach of the Loan Agreement; (3) references to unspecified "evidence admitted

9

into evidence" that supposedly counters the City's evidence with respect to Count I; and (4) references to the standard of review of a "jurisdictional plea motion to dismiss" and its likeness to that of a traditional motion for summary judgment. ECF No. 148. Attached to the Response, City Wide also includes an affidavit from Mr. Roberts alongside a timeline of "Meetings and Correspondence" between City Wide and the City. *Id*. This evidence is comprised almost entirely of general meeting notes between the parties—ranging from December 2016 to November 2020—and several emails between Mr. Roberts and various members of the City of Dallas discussing the Opal Project development timeline. *Id*. at Exs. A–N.

  The Court need not rule as to whether there is a genuine dispute of material fact with regard to the second and fourth elements of a breach of contract under Texas law, because the Court finds there is no genuine dispute of material fact as to any breach committed by the City in the present matter. While the Court acknowledges the affidavit and exhibits attached in the Response indicate that the City remained in contact with Mr. Roberts beyond the September 2018 development deadline for the Opal Project, nothing in the evidence provided by City Wide sufficiently proves that the City was ever in breach of the Loan Agreement or that a moratorium was ever put into place by the City prior to the project's completion deadline. Instead, the evidence indisputably shows that Mr. Roberts was never affirmatively told that there was a moratorium preventing City Wide from completing the Opal Project, nor did anyone from the City of Dallas ever inform City Wide that development had to cease until further notice.

  Despite Mr. Roberts's testimony that an "implied" moratorium existed based on his understanding of conversations he allegedly had with the City, no admissible evidence has been presented by City Wide, beyond Mr. Roberts's interpretation of how the events at issue unfolded, that any breach by the City was ever committed. Taking the Plaintiff's exhibits in as favorable a

10

light as required, scattered email correspondence over several years, none of which establishes either an express or implied moratorium on development, is, frankly, does not create a **genuine** dispute of **material** fact. Likewise, based on the Court's findings, no element of injunctive relief relative to such alleged breach may be maintained. Accordingly, the Court finds that the City's MSJ is granted with respect to Count I of the Complaint.

### B. Count II

As noted in the District Court Order, Count II in the Complaint seeks two separate declarations by the Court: (1) that City Wide did not default on the contract governing the Opal Project; and (2) that any "cloud" over title to the Opal Project properties is removed. *See* ECF No. 126. Taking the two requests for relief in turn, the City first argues that the evidence presented "indisputably" establishes that City Wide was in breach of the Loan Agreement, given that the Debtor explicitly amended its Confirmation Plan to "acknowledge a default has occurred in the transactions referenced in [Claim 16-1] that would be uncurable under 11 U.S.C. § 365 principles." ECF No. 139 at Ex. G. Furthermore, the City notes that City Wide also stipulated in its Confirmation Plan that the completion date of the Opal Project was in fact September 2, 2018, thereby showing that the Debtor never completed development of the properties by the agreed-upon deadline—a fact that Mr. Roberts testified to as well. *Id*.

Second, the City argues that the declaratory relief requested by City Wide is "inappropriate" because "there is not a cloud on the title of the Opal Project properties." ECF No. 139. More specifically, and given the elements for quiet title under Texas law, there is no "cloud" as to the title underlying the properties, because the parties have already agreed to resolve the property dispute and further agreed that, if City Wide's adversary proceeding was unsuccessful, City Wide would convey the Opal Project properties to the City via warranty deed. *Id*.

Accordingly, any declaration as to the title of the properties would be essentially pointless, given that clarity as to the title would naturally be resolved at the end of the current case. *Id.*

City Wide's Response does not adequately address these arguments in any substantive way, instead focusing on which declaratory judgment statute a plaintiff may pursue a declaratory judgment under, as well as the weight the Court should give the Plaintiff's allegations in the Complaint. Notwithstanding the lack of evidence presented by City Wide with respect to Count II on either declaratory relief request, the Plaintiff argues that "there is a dispute to each element that precludes a holding of 'undisputed,'" without providing any support for such a contention. To the contrary, as the City notes, City Wide readily admits that the "undisputed evidence supports [the] City that there is no evidence that a [moratorium] was made by [the City]." ECF No. 148 at 20, ¶ 43.

The most generous reading of the Response filed by City Wide is that it was not in breach of the Loan Agreement because the "hindrance" imposed by the City's alleged actions "led to the expiration of the time to complete development." *Id.* Regardless, City Wide's contention is devoid of any support for how its failure to complete the Opal Project on time was not a breach, nor does it dispute its stipulation in the Confirmation Plan that it was **in fact** in default with respect to the agreement. Accordingly, the Court finds there is no genuine dispute that City Wide breached its obligation under the Loan Agreement.

Similarly, City Wide had provided no evidence to create a genuine dispute of material fact that there is a "cloud" over the title underlying the Opal Project properties. Under Texas law, to prevail on a quiet title cause of action, a claimant must show: (1) the claimant has an interest in the specific property; (2) title to the property is affected by a claim of the defendant; and (3) the defendant's claim, although facially valid, is invalid or unenforceable. *See JPMorgan Chase Bank,*

12

*N.A. v. Ablett*, Civ. Action No. 4:17-CV-00888, 2018 WL 4517628, at *5 (E.D. Tex. Aug. 17, 2018).

In *Ablett*, the court articulated that a suit to quiet title "relies on the invalidity of the defendant's claim to the property." *Ablett,* 2018 WL 4517628 at *6 (citation omitted) (internal quotations omitted). In other words, the primary determination by the court is evaluating both the alleged "invalidity of the defendant's claim" but also the plaintiff's ability to "prove and recover on the strength of his own title." *Id*. As best that can be surmised from both the Complaint as well City Wide's Response, City Wide contends that the City has created an "impermissible cloud" on City Wide's title by attempting to enforce the default provisions under the Loan Agreement due to City Wide's failure to complete development of the Opal Project by September 2, 2018. *See* ECF No. 53 at 12. Put another way, the City's attempt to enforce the contract and foreclose on the properties, after having already transferred title to City Wide pursuant to the loan agreement, creates a "cloud" over the title to the properties. *See* ECF No. 148 at 24.

The Court finds several issues with City Wide's arguments on this point. First, City Wide has not provided any evidence to support the contention that the City's claim in the underlying bankruptcy proceeding—a claim that is being **directly and consensually treated by the parties** through this very adversary proceeding—creates a "cloud" over the title to the properties. Second, even if there was, hypothetically, a "cloud" over the title, the Court finds that it is beyond dispute that conclusion of this adversary proceeding resolves that very issue, as intended by the parties. As stipulated in the Confirmation Order by City Wide, should the City prevail in the adversary proceeding, "[City Wide] shall reject the executory contract and return all the property in the Opal adversary with a warranty deed, free and clear of all liens and/or encumbrances . . . ." *See* Case No. 21-30847, ECF No. 450 at 3. Plainly, the Confirmation Order itself explicitly contemplates

13

the protocol for resolving any potential title disputes over the properties. The provision that contemplates transferring the Opal Project properties to the City presupposes that title to the properties will be handled in **only** one of two ways: (1) maintained by City Wide if it prevails; or (2) conveyed to the City if it prevails.

Therefore, the Court finds that City Wide has failed to create a genuine dispute of material fact that it is entitled to declaratory relief with respect to any perceived "cloud" over the title to the properties in question. Accordingly, the Court grants the City's MSJ with respect to Count II of the Complaint.

### C. Count IV

Once again, the District Court previously held that Count IV of the Complaint for promissory estoppel is "**rooted in breach of contract law**." ECF No. 126 at 10 (emphasis added). However, the City notes that Count IV effectively contains two distinct requests: (1) a request for a declaratory judgment that the City cannot accelerate its rights under the Loan Agreement and foreclose on the Opal Project properties; and (2) a request for a declaratory judgment that the City must agree to reasonably extend the time for City Wide to develop the properties for sixteen months. *See* ECF No. 139 at 15.

Under Texas law, in order to prove a cause of action for promissory estoppel, a party must show: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial reliance by the promise. *See Cooper v. Gates*, No. 3:16-CV-2630-L, 2017 WL 3209452, at *4 (N.D. Tex. Mar. 7, 2017). In the MSJ, the City contends that City Wide cannot establish the first element, in that no promise was ever made by the City to City Wide as to an extension of the Loan Agreement, permitting City Wide additional time to complete development. ECF No. 139 at 15. City Wide contends that its promissory estoppel claim remains in dispute

because the City made "oral promises" to City Wide that the Plaintiff would be provided extensions of development during the two-year period following the stoppage in development. *See* ECF No. 148 at 28. Furthermore, City Wide contends it would be "unreasonable" to assume that City Wide would continue to attend staff meetings and "exert other substantial efforts" to continue the Opal Project without a promise from the City that it would be permitted to finish the Opal Project after the September 2018 deadline. *Id*.

At the MSJ Hearing, City Wide expanded upon its arguments made in the Response by contending that the testimony provided by Mr. Roberts with regard to the allegedly requested $300,000 in development funds, as well as the actions taken by City Wide subsequent to the alleged request, highlight that a **promise** by the City to extend the development deadline must have been made. Put simply, the Plaintiff contends that the City orally promised the $300,000 in funds as part of the Loan Agreement in order for City Wide to continue its demolition and development efforts. City Wide further argues that, because Mr. Roberts testified that this alleged promise by the City was made orally, there is at least a genuine dispute of material fact as to whether that promise exists because an oral promise is, by its very nature, a question of fact that cannot be sufficiently proved or disproved at the summary judgment stage.

The Court agrees with City Wide that the emails attached to its Response highlight that there may still be a genuine dispute of material fact as to whether City Wide's reliance on any alleged promise by the City was "substantial" under the circumstances, or that the City's continued communications with Mr. Roberts after the contractual deadline may create a genuine dispute as to the foreseeability of City Wide's reliance based upon the City's actions. However, none of the evidence presented by City Wide creates a **genuine** dispute of material fact that a **promise** was **ever made to City Wide** that an extension to the agreement was forthcoming.

On the contrary, not only did Mr. Roberts testify that **he could not recall** whether anyone with the City had ever promised an extension to the Loan Agreement, but Ms. Favela testified that she never made such a promise to Mr. Roberts nor did she have the authority to do so in the first place. *See* ECF No. 139, Roberts Dep. at 49:20–50:12, Favela Dep. at 18:5–52:4. This evidence is uncontroverted by City Wide, and, beyond a handful of emails showing continued communications with the City, the Plaintiff has provided no evidence to meet its burden that a promise by the City may have existed.

Instead, City Wide relies almost entirely upon sweeping inferences it hopes the Court will adopt as fact, arguing that City Wide would not have continued communicating with the City if there had never been a promise to extend the development deadline. While this inference might plausibly survive at the motion to dismiss stage, any such contention at the motion for summary judgment stage requires **factual support** beyond scant communications that do not create a genuine dispute as to the element at issue. Finally, the greater part of City Wide's argument at the MSJ Hearing is plainly not contained in its Response. The Court did an independent search for any references in the Response as to the $300,000 that City Wide now alleges was promised by the City, thus triggering City Wide's reasonable reliance that the contractual deadline had been extended. No such reference can be found in the Response anywhere.

The Court further notes that, while the $300,000 was discussed during Mr. Roberts's deposition, the word "promise" is wholly absent from his deposition. Rather, Mr. Roberts vaguely testified that he orally requested the remaining $300,000 in funds, but could not affirmatively testify as to when this request occurred, to whom the request was made, or how that request ultimately transformed into an enforceable promise by the City to extend the development deadline for the Opal Project. To compensate for the lack of evidence, City Wide curiously suggests that by

16

alleging that an oral promise occurred, a promissory estoppel claim is seemingly bulletproof at the summary judgment stage because the oral nature of the alleged promise inherently creates a dispute. In addition to the lack of evidentiary support that a promise to City Wide was made, City Wide has provided no legal support for its position.

The parties have been provided numerous opportunities for discovery over the course of several years in this case. The Court even expanded the City's discovery obligations as to other development projects. The argument that summary judgment should be denied because a promise must have existed to explain the Defendant's actions, without any **concrete evidence** to support the existence of a promise, is insufficient for purposes of a motion for summary judgment. The testimony provided by Mr. Roberts was equivocal at best, if read generously, and falls short of establishing a promise by the City actually existed.

Therefore, the Court grants the City's MSJ with respect to Count IV of the Complaint.

### D. Attorney's Fees

Finally, the City argues that City Wide is not entitled to attorney's pursuant to § 37.009 of the Texas Civil Practice and Remedies Code because such a remedy is not available in federal court in connection with a cause of action under the Federal Declaratory Judgment Act. *See* ECF No. 139 at 16; *see also AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 705 (5th Cir. 2009). The Court notes that City Wide neither addressed this argument in its Response, nor made any argument with respect to attorney's fees at the MSJ Hearing. Therefore, the Court grants the City's MSJ on this point, finding that City Wide is not entitled to attorney's fees.

## IV.    CONCLUSION

Accordingly, it is hereby

**ORDERED** that the *Motion for Summary Judgment* filed by the City of Dallas is GRANTED, and Counts I, II, and IV in the Complaint filed by City Wide Development Corporation are dismissed with prejudice; it is further

**ORDERED** that, pursuant to the Confirmation Order filed in Case No. 21-30847, the Opal Project properties shall be conveyed to the City of Dallas with a warranty deed, free and clear of all liens and/or encumbrances and with all taxes current on all properties within thirty (30) days of entry of a final order in this adversary; it is further

**ORDERED** that City Wide is not entitled to attorney's fees pursuant to § 37.009 of the Texas Civil Practice and Remedies Code; and it is further

**ORDERED** that, given all causes of action in the Complaint have been dismissed, the case is hereby dismissed with prejudice.

###END OF ORDER###